## In re HASKELL (two cases).

(Court of Appeals of District of Columbia.  Submitted January 12, 1922.  Decided February 6, 1922.)

Nos. 1471, 1472.

Patents ☞66—Claims for cement for veneering held not anticipated by general statements in earlier patent.

> Claims for a process for making a cement from a mixture of black albumen and disodium silicate, substantially, though not actually, in the proportions specified, whereby the mixture is given a syrupy consistency, and for the product of such process, *held* not anticipated by a patent dated 22 years before the filing of the application, which stated generally that all albumens acted as acids toward alkalis and formed double salts, especially where, 10 years after the earlier patent, an expert had stated that the mixture disclosed thereby had not been used with good results.

Appeals from the Commissioner of Patents.

Separate applications by Henry L. Haskell for patents for a process for making cement and for the cement.  From decisions of the Commissioner of Patents, rejecting two claims of the process application and one claim of the product application, the applicant appeals.  Reversed.

Henry L. Haskell, in pro per., Fred L. Chappell and Otis A. Earl, both of Kalamazoo, Mich., and W. F. Freudenreich, of Chicago, Ill., for applicant.

T. A. Hostetler, of Washington, D. C., for Commissioner of Patents.

ROBB, Associate Justice.  These are appeals from decisions of the Patent Office rejecting claims 7 and 8 in the first case and claim 6 in the second, the three rejected claims reading as follows:

"7. Process of preparing and applying cement consisting of dissolving black albumen in water, adding thereto disodium silicate, mixing the same until the mixture is homogeneous in substantially the proportions specified, applying the same to surfaces to be joined, and applying heat and pressure to set the same, as specified.

"8. Process of preparing and applying cement consisting of dissolving black albumen in water, adding thereto disodium silicate, mixing the same until the mixture is homogeneous in substantially the proportion specified, applying the same to surfaces to be joined, and applying heat and pressure to set the same, thereafter boiling the laminated wood to completely soften and heat its texture and molding the same under heat and pressure to desired form."

"6. A cement consisting of a mixture of a solution of blood albumen and silicate of soda dissolved and chemically combined together and of a syrupy consistency."

Inasmuch as the application in the first case is a division of the application in the second, we will consider the latter case first.

In his specification applicant says that the objects of his invention—

"are to provide an improved waterproof cement or glue which shall resist the action of the elements in use to an unusual degree and is especially well adapted to cementing or glueing veneer for canoes, boats, or for aeroplanes, including the wings, body and other parts. * * * In the preparation of my improved waterproof glue or cement I mix and dissolve black albumen,

which is dried blood, in water in the proportion of forty-five (45) per cent. of blood to fifty-five (55) per cent. of water by weight and stir the same to dissolve the said black albumen as fully as it is possible to do it at the usual atmospheric temperature of a room at, say, about 70°. I place this material in a suitable stirring apparatus so that the same is stirred very thoroughly and continuously for several hours, usually about six hours. This insures as complete solution of black albumen or blood in the water as is possible to accomplish at the temperatures indicated and makes a homogeneous mixture. * * * I mix this blood preparation with a heavy grade of silicate of soda in the proportion by weight of five parts of dried blood to one part of silicate of soda solution. * * * Apparently reaction takes place between these ingredients. I stir and mix the same thoroughly until the mixture has an appearance similar to heavy molasses."

The cement is applied to veneers in the usual way and the material is then subjected to heat at substantially the boiling point of water. The specification further states that "there is slight variation possible from these proportions but to secure the thickening or syrupy effect the proportions of blood to silicate cannot be much varied." Applicant also says in his specification that veneer put together with his cement can be molded afterwards as desired; that he has boiled samples continuously for four months without apparent injury.

The Examiner was of the view "that applicant has probably discovered certain proportions of albumen and silicate which produce valuable results, such as were not appreciated by the patentee Gardner," and therefore allowed claims 1 to 5. He, however, denied the claim here involved because persuaded that the "broad idea" of this claim is disclosed in the Gardner patent. This view was adopted by the Examiners in Chief. On appeal the Assistant Commissioner said:

"There is no doubt that an applicant who has made a patentable discovery in a composition of matter should ordinarily be allowed latitude for these proportions that would prevent an unauthorized user from varying his recipe slightly while obtaining substantially the same desired result without paying tribute for the information given the public by the discovery."

Nevertheless the Assistant Commissioner reached the conclusion that, in view of what he conceived to be limitations in the specification, the appealed claim was not allowable.

The British patent to Gardner, considered by the lower tribunals, is dated October 1, 1896, or about 22 years before the present application was filed. The subject of that invention was a waterproof glue and in the specification it is stated that—

"All albumines possess towards alkalic substances the character of acid because they unite and form salts; i. e., double salts."

Among the eight alkalic substances mentioned as "capable of being employed" are silicates, and among the four albumines is blood. A reading of the very general terms of the specification convinces us, as it apparently did the Patent Office tribunals, that Gardner had no conception of the invention made by Haskell. It is one thing to conceive the idea that a certain result is possible and quite another thing to demonstrate the possibility; that is, actually devise means to accomplish the result and convert the possibility into a reality. In the affidavit filed by Mr. Haskell in support of his application he sets forth:

That it is not possible, in carrying out the Gardner process, to produce a material that even approximately approaches his own in strength and durability; "that all other glue joints with which he has been familiar prior to his invention herein, or that he has ever seen advertised by others as made under the Russian method or under secret process, have yielded and broken down after a period of one of three hours of boiling, whereas he has boiled samples of his material for a period of four months, as above indicated, without effect upon the joint; * * * that the joint resulting from his improved material is of such quality and character that the laminated board made up of veneers is capable of being boiled and molded, retaining its form without breaking the joint", etc.

As further evidence that applicant has made a valuable discovery, our attention has been invited to the action of the Commissioner, who, early in 1919, prohibited applicant, under the provisions of Act Oct. 6, 1917 (Comp. St. 1918 Comp. St. Ann. Supp. 1919, § 9429a) from making public his invention at that time, because it had "been found to contain subject-matter which might be detrimental to the public safety or assist the enemy in the present war." Manifestly this action would not have been necessary, had the Gardner disclosure really anticipated this invention. In the allowed claims the approximate proportions of the ingredients are supplied, but in each of the claims it is stated that the mixing must continue "until the mass becomes of a homogeneous syrupy consistency." Gardner evidently did not appreciate the necessity of combining the ingredients in the manner employed by the applicant and makes no mention of mixing such materials "until the mass becomes of a homogeneous syrupy consistency." This is important and goes far toward demonstrating that applicant and not Gardner really is the originator of the subject-matter of the claim here under consideration. Moreover, almost 10 years after the grant of the Gardner patent, A. M. Luther, in his German patent, said:

"It is a well-known fact that blood or blood albumen by itself as well as mixed with lime or alkalis, possesses adhesive properties. But it has as yet not been used with good results for glueing together pieces of wood; e. g., for veneering."

In other words, the British patent did not disclose to Luther, an expert, what the Patent Office has ruled, in effect, must have been disclosed to the applicant here. While applicant has stated in his specification that only slight variation from the given proportions is possible, he concededly has produced a result not contemplated before. Haskell has given the public a very useful and valuable material and we are not disposed, in such circumstances, to withhold from him adequate protection because of vague and general expressions in a patent more than 20 years old. The allowance of the five claims might be of little value without the appealed claim. That claim, in our view, goes no farther than he has gone. It covers, and should cover, what he actually has done, and we think it should be allowed. See In re Lower, 50 App. D. C. 159, 269 Fed. 675; In re Huff, 48 App. D. C. 258.

What we have just said applies with equal force in No. 1471, since the same reference was relied upon in each case. It follows that the two decisions appealed from must be reversed.

Reversed in No. 1471.

Reversed in No. 1472.

Mr. Justice HOEHLING, of the Supreme Court of the District of Columbia, sat in the place of Mr. Chief Justice SMYTH in the hearing and determination of this appeal.